# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

FAULK                                    CIVIL ACTION NO. 18-0830

VERSUS                                   JUDGE ROBERT G JAMES

COMMISSIONER OF SOCIAL        MAGISTRATE JUDGE WHITEHURST
SECURITY

## REPORT AND RECOMMENDATIONS

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court finds that the Commissioner's decision should be reversed and remanded to reevaluate whether the claimant's lumbar spine condition meets or equals the criteria of a listed impairment under Listing 1.04(A).

## Administrative Proceedings

The claimant, Eric James Faulk, fully exhausted his administrative remedies before filing this action in federal court. On June 10, 2015, he filed applications for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") alleging that he became disabled on June 10, 2015. *R. 10, p. 19.* His applications were denied. *Id..* He requested a hearing, which was held on April 6, 2017 before Administrative Law Judge Robert Grant. *Id. at p. 28.*

1

The ALJ decided that the claimant was not disabled within the meaning of the Social Security Act from June 10, 2015 (the alleged disability onset date) through May 15, 2017 (the date of the decision). Claimant requested review of the decision, but the Appeals Council found no basis for review. *Tr. 17.* Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Claimant then filed this action seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born August 19, 1985. At the time of the ALJ's decision, he was 30 years old. The claimant dropped out of high school but his father made him return and get his GED. *R. 13, p. 3.* He has relevant work experience as a rigger, rice mill worker and carpenter's helper. *Id.* The claimant alleged that he has been disabled since June 10, 2015, due to traumatic brain injury ("TBI") which he suffered in an assault in 2011. At the hearing he stated that his TBI has caused a lot of loss of memory. *R. 10-1, p. 38.* He also alleges spinal impairment including herniated disc requiring anterior lumbar interbody fusion with a cage insertion at L5-S1 in 2016, as well as ADHD, anxiety, delayed post-traumatic stress syndrome and schizoaffective disorder. *R. 13, pp. 4-6.* He stated that his pain goes from an 8 to 10 daily and it shoots down the left side of his leg all the time and then in to the middle

2

of his spine and his neck. *R. 10-1, p. 37.* He has to use a cane. *Id.* He stated that his doctor prescribed therapy but that Medicaid refused to pay for it so his mother began taking care of him. *Id. at pp. 42-43.* He stated that he is "100%" dependent on her. *Id.*

A March 18, 2011 MRI of the claimant's lumbar spine revealed minimal anterolisthesis at L5-S1, and mild disc space narrowing at L4-5. The vertebral body heights and alignment were otherwise normal and pedicles appeared intact. *Id., 1F, p.8.*

On May 3, 2015, after a physical assault, the claimant was seen at Kaplan Memorial Hospital for severe head trauma with lower back and neck pain. *Id., 2F, pp. 6-25.*

On September 28, 2015, he was seen at Abbeville Community Health Center ("ACHC") complaining of severe chronic headaches ("worst I've ever had"), 2 falls in the shower, lower back pain radiating to the left leg and neck pain, which he stated began 3months ago when he was assaulted. Dian Verdeflor, APNP, assessed chronic post-traumatic chronic headache, neck pain and lower back pain. *Id., 6F, pp.35-38.* A repeat MRI of the lumbar spine was performed at that time. The results of the MRI revealed mild grade 1 spondylolisthesis of L5-S1; moderate degenerative disc space narrowing at L5-S1 and apparent L5 pars defect. *Id., 4F, p.13.* At a follow-up visit

on November 2, 2015, the claimant reported continued headaches, neck and back pain and two falls in the bathroom. Verdeflor recommended he be scheduled for evaluation by a neurologist. *Id., 6F, pp. 32-33.*

On February 18, 2016, the claimant was noted to have an abnormal, unsteady gait. *Id., 6F, p.24.* An examination on February 29, 2016 revealed abnormalities of the lumbar/lumbosacral spine. The lower back exhibited swelling, tenderness on palpation of the supraspinous ligament on the left side, lumbosacral muscle spasms and paraspinal muscle spasms on the left side. *Id., 6F, pp. 20-22.* On March 7, 2016, another MRI revealed prominent disc disease at L5-S1 with broad-based herniation extending mainly to the left with nerve root edema on that side. *Id., 4F, p.74.* On April 19, 2016, the claimant was scheduled to attend therapy at The Rehab Center twice a week for ten weeks. Physical therapist, Michael Yoes, Jr, MPT, PT, noted that the claimant had a diagnosis of severe low back pain, spondylolisthesis and lumbar intervertebral disc disorder, with positive radicular signs, positive straight leg raising test, lower extremity weakness, abnormal gait and severe muscle spasms resulting in regular falls. Yoes further noted that the claimant's Rehab potential was "fair to poor." *Id., 5F, pp.* 9, 14. After two physical therapy sessions, the claimant's physical therapy sessions were discontinued. The May 5, 2016 Status Report by Yoes stated that the claimant "poorly tolerated any interventions" as any attempts

worsened his symptoms. Yoes reported that any attempts to decrease his lumbar nerve impingement resulted in his pain elevating from 6/10 to 10/10, increased blood pressure, diaphoresis and facial signs of severe pain symptoms. *Id., 5F, pp. 10, 14.* Yoes opined that physical therapy, no matter how conservative, could not be tolerated. He recommended a spinal specialist/neuro-surgical consult for either pain management or surgical considerations and an "AD" (ambulation device) for gait to prevent any falls. *Id., 5F, p. 22.*

On July 18, 2016, the claimant was seen by Clifford Crutcher, II, M.D. at University Medical Center of New Orleans. At that time, his chief complaints were neck and mid back pain that radiated down his left leg to his feet, associated with tingling. He also had some pain down his right leg to the knee. The claimant's mother reported that he has frequent falls due to pain and weakness. The examination showed that he was acutely distressed. He had diminished sensation in the distal extremities but his strength was 5/5 in all extremities. *Id., 7F, pp. 1-3.*

On August 22, 2016, a CT scan of the lumbar spine revealed bilateral L5 pars defect with moderate to severe disc space narrowing at L5-S1, moderate sized posterior disc bulge and grade 1 anterolistheses of L5 on S1. There was focal radiotracer accumulation within the lateral aspect of the L5-S1 vertebral body endplates, as well as the left L5-S1 facet joint. *Id., 7F, p. 6.*

5

On October 27, 2016, the claimant was hospitalized and underwent an anterior lumbar interbody fusion discectomy at L5-S1. On October 30, 2016, he was discharged home and instructed to avoid heavy lifting for six weeks. *Id., 7F, pp. 28-29, 49, 60-65.*

On December 14, 2016, the claimant was seen for a post-op follow-up visit. The neurosurgery progress note stated that he had "a small area of wound dehiscence" (or "wound separation").[1]The progress note also stated "he is walking much better, but he is still with significant back pain." *Id., 8F, p. 1.*

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) Substantial evidence "must do more than create a suspicion of the

---

[1] Dehiscence is a surgical complication where the edges of a wound no longer meet. It is also known as "wound separation. https://www.verwell.com/what-is-dehiscence-and-evisceration-3156922. (May 10, 2019).

existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), and credibility assessments, *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991), are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Id.*

## B. <u>Entitlement to Benefits</u>

The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled,

regardless of indigence. *See* 42 U.S.C. § 423(a). If unmarried and between fifty and sixty years old, the widow of a fully insured individual is entitled to widow's insurance benefits if she is disabled and her disability began no more than seven years after the wage earner's death or seven years after he was last entitled to survivor's benefits. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits. 42 U.S.C. § 1382(a)(1) & (2).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C. <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.   This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. §§ 404.1520(a)(4). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to

 step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can

perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* at 1302; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan*, 38 F.3d at 236.

### D. <u>The ALJ's Findings and Conclusions</u>

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since June 10, 2015. *Tr. 18.*   This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: lumbar degenerative disc disease, status-post lumbar fusion, and traumatic brain injury (20 CFR 404.1520(c) and 416.920(c)). *Id.* This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment, specifically listings 1.04 and 12.02. *Tr. 18-19.* The claimant challenges

this finding.

The ALJ found that the claimant has the residual functional capacity to perform a full range of sedentary work at all exertional levels: lifting ten pounds occasionally, standing/walking two out of eight hours and sitting six out of eight hours, except for the following: "[h]e is limited to simple, routine and repetitive tasks with one or two step instructions in a work environment free of any fast paced production requirements, with few if any workplace changes." *Tr. 20.* The claimant challenged this finding.

At step four, the ALJ found that the claimant is not capable of performing any past relevant work. *Tr. 23.* The claimant did not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from June 10, 2015 through May 15, 2017 (the date of the decision) because there are jobs in the national economy that he can perform. *Tr. 24-25.* The claimant challenged this finding.

### **E. The Allegations of Error**

The claimant contends that the ALJ erred by (1) improperly evaluating the evidence that the claimant meets Listing 1.04(A); (2) failing to identify or evaluate the limitations resulting from Schizophrenia and Generalized Anxiety Disorder at Step 2; (3) failing to fully develop the Record.

## 1. Evaluation of the Evidence as to Listing 1.04 (A)

The claimant contends that the ALJ erred in failing to properly evaluate the medical evidence as to whether or not the claimant's spinal impairment met the requirements of Listing 1.04 (A). Listing 1.04 governs disorders of the spine, resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. §404.1520(a)(4)(iii). at Part 404, Subpart P, Appendix 1, Listing 1.04. To be found disabled under this listing, the plaintiff is required to demonstrate the criteria of Listing 1.04 as well as those of one of three subsections. The subsection at issue in this appeal, Subsection A, requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04(A).

In finding that Plaintiff's degenerative disc disease does not meet Listing 1.04(A), the ALJ merely stated, "[i]n reaching this conclusion, the undersigned has specifically considered the requirements of listing 1.04 and 12.02." *R. 10-1, p. 22.* The ALJ went into detail as to the application of the criteria of listing 12.02, Paragraph B, mental impairment, as it related to the claimant's medical history, *Id.*

12

*at pp. 19-20*, but he failed to ever mention or discuss the criteria of listing 1.04 (A) or the application to the claimant's medical history.

In his consideration of the claimant's "physical impairment," the ALJ briefly referenced the records from two ACHC clinic examinations, November 2, 2015 and February 18, 2016 and noted the results of the claimant's September 28, 2015 and his March 7, 2016 MRIs of the lumbar spine *Id., p. 21*. With little detail, the ALJ noted that the claimant's physical therapy was curtailed after two visits and that consultation with a spinal specialist/neurosurgeon was recommendation. *Id.* He then discussed the findings of the August 22, 2016 CT scan of the claimant's lumbar spine, noted that the claimant "underwent a successful anterior lumbar interbody fusion and discectomy at L5-S1," stated that the claimant reported "he still had significant back pain" and indicated that the neurosurgeon stated that he could start physical/occupational therapy. *Id. at p. 22*. The claimant argues that his September 28, 2015 through December 14, 2016 complaints of back pain going down his legs, made worse with standing, walking and lifting; the presence of muscle spasms on examination, *Tr. 394 – 395,* and the MRI which showed "moderately narrowed" disc space at L5-S1 with pars defect at L5-S1, *Tr. 276 – 287, 412*, all fit the requirements of the Listing.

Relying on the Fifth Circuit's opinion in *Audler v. Astrue, R. 13, p. 5* (citing

*Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)), the claimant argues that the ALJ's evaluation of his spine disorder is insufficient and beyond meaningful judicial review. He complains that the ALJ failed to adequately report the physical therapist's reported clinical signs and observations related to his severe pain which lead to the therapist's conclusion that the claimant was a lumbar surgical candidate. *Tr. 351*. As to his review of the neurosurgeon's records, the claimant contends that the ALJ failed to mention that the surgeon refilled his pain medicine and recommended a return in three months and a follow up CT scan in one year. *Tr. 466-468*. Nor did the ALJ note that the claimant had requested the Appeals Council to consider new evidence consisting of an MRI report dated December 20, 2017 which revealed moderate facet joint and vertebral bone spurring at L5-S1 with hypertrophic spurring and postoperative fibrosis resulting in moderate narrowing of both neural foramina and moderate impingement upon the exiting nerve roots. *Tr. 11 – 14*. The claimant also contends the Appeals Council erred in failing to discuss this evidence which further supports that he met a Listing.

In *Audler*, the Fifth Circuit reviewed the ALJ's decision at step three where the ALJ "did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment."

14

*Audler*, 501 F.3d at 448. The Fifth Circuit found this "bare conclusion [ ] beyond meaningful judicial review." *Id*. (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ). The Fifth Circuit stated that, pursuant to 42 U.S.C. § 405(b)(1):

> the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step. Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."

> *Id*. (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Here, the Court finds that while the ALJ identified 1.04(A) as the listed impairment, he failed to identify any of the criteria of 1.04(A) or provide any explanation as to how he reached the conclusion that the claimant's symptoms are insufficiently severe to meet any listed impairment. The claimant also contends that the Appeals Council erred in failing to consider the December 20, 2017 CT scan report of his lumbar spine which he submitted as new and material evidence further supporting that he met Listing 1.04 (A). *Tr. 11-14*. The Social Security regulations provide that that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970, 404.976(b). The

CT scan at issue was dated after the date of the ALJ's decision and is therefore "new" evidence as it was not before the ALJ. Also, it is a post-operative scan of the claimant's lumbar spine, L5-S1, and clearly contains information related to the claimant's condition prior to the date of the ALJ's decision.

Based on the foregoing, the Court finds that the ALJ failed to properly explain why he found the claimant did not meet not Listing 1.04 (A) as required under *Audler*. Accordingly, this case should be remanded for such full review. The Court further finds that upon complying with the Court's order, the ALJ should consider the entire record, including the "new" evidence of the claimant's December 20, 2017 post-operative CT scan. *Tr. 11-14*.

## 2. Evaluation of the Evidence related to the Claimant's Mental Condition

The records of ACHC indicate that the claimant was first assessed with "schizoaffective disorder" and "generalized anxiety disorder" by APRN, Lisa Griffin, on October 21, 2015. *R. 10-1, 6F, pp. 33-34*. The claimant contends that in evaluating his mental impairment the ALJ failed to address the uncontradicted medical evidence of these two impairments that could limit his ability to maintain concentration and pace and to work in proximity to the public or others. Citing *Kneeland v. Berryhill*, 850 F.3d 749 (5th Cir. 2017), the claimant argues that the ALJ's failure to consider these impairments in formulating his hypothetical

questions to the VE left his RFC decision unsupported by substantial evidence.

The Commissioner responds that even though he did not specifically state that the claimant was diagnosed with anxiety and schizoaffective disorder, the ALJ considered functional limitations associated with such conditions and his RFC determination was supported by substantial evidence. The Court agrees. Upon reviewing the ALJ's evaluation of the claimant's mental impairment, the ALJ cited the claimant's ACHC medical records regarding his psychological issues after his 2015 assault, from August 21, 2015 through July 22, 2016. *Id., 6F, pp. 24-42.* While the ALJ did not indicate that schizoaffective disorder and generalized anxiety disorder had been added to the claimant's assessments, nor that Resperdal had been prescribed in addition to his prescription for Valium, the ALJ carefully considered the claimant's psychiatric assessments during that period.

The ALJ noted that on August 21, 2015, the claimant was seen for complaints of anxiety, paranoia, mood swings and problems focusing, and reported a history of treatment for ADHD and depression. He further noted that at the time the claimant's mood was labile, anxious and irritable and his affect was labile and agitated. No other abnormalities were noted. Adderall, Valium and Tripleptal were prescribed. During the remaining office visits, the claimant indicated that while he had memory problems, the medications were helping and he was able to focus and stay on task;

although he still had some paranoia, his cognitive functioning was normal. *R. 10-1, p. 22.* Specifically, on October 21, 2015, he reported that his medications were helping and his psychiatric examination showed he demonstrated normal cognitive functions, normal speech, normal behavior, euthymic mood, normal affect, normal thought processes and normal thought content. *10-1, 6F, p. 34.* The ALJ noted that a follow-up visit on January 14, 2016, indicated that the claimant had mild difficulties in maintaining social functioning and maintaining concentration, persistence or pace, however, his medication helped him to function. *Id. at p 28.* He further noted that his functioning was normal in visits through July 22, 2016. *Id., 6F, pp. 24, 17, 14, 12, 10.* Finally, the ALJ noted there was no indication in the record that the claimant sought or received any significant follow-up treatment for any mental health issues related to his TBI since July 2016.

Based on the foregoing medical evidence, the ALJ found that "the severity of the claimant's mental impairment did not meet or medically equal the criteria of Listing 12.02." *Id. at p. 22.* As to the claimant's functional limitations, the ALJ further found that the evidence indicated that his mental impairments were no more than mild limitations. The Court finds that substantial evidence supports the ALJ's findings as to the mental limitations assigned to the claimant.

The Court disagrees that the ALJ was required to order a consultative

18

examination of the claimant's cognitive ability in order to establish the presence of any and all mental impairments and any resulting limitations. "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996). A consultative evaluation, however, is only required "when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Id*. The ALJ's duty to undertake a full inquiry, however, "does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977). The decision to require such an examination is within the discretion of the ALJ. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir.1987).

As the Court has found, the ALJ thoroughly discussed the evidence related to the claimant's mental functioning. The ALJ's findings were clear that the record was sufficient for him to make a determination on the claimant's disability claim related to his mental impairment.

**<u>Conclusion</u>**

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the

fourth sentence of 42 U.S.C. § 405(g). More particularly, the Commissioner should be instructed to reevaluate whether the claimant's lumbar spine impairments meet or medically equal the criteria of a listed impairment under Listing 1.04(A); properly consider and weigh the post-hearing medical records in the record; and again evaluate the claimant's residual functional capacity. The claimant should also be afforded an opportunity to supplement the record with updated medical records and to testify at another hearing. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). *See, Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992); *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d

1415 (5th Cir. 1996).

      **THUS DONE AND SIGNED** this 24th day of May, 2019.

                            _____

                            UNITED STATES MAGISTRATE JUDGE